UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| RACHAN DAMIDI REDDY | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:18-cv-00172 |
| | ) | |
| v. | ) | |
| | ) | |
| RASHID A. BUTTAR, | ) | |
| | ) | |
| Respondent. | ) | |

### RESPONSE IN OPPSOSITION TO MOTION TO DISMISS

After making every effort to evade service of the subject Petition for months – including refusing multiple times to accept service or authorize his attorneys to do so – all without any justification or excuse whatsoever – Respondent has now decided to make an appearance to challenge the Petition. In his recently filed Motion to Dismiss, Respondent argues that this Petition, which was filed pursuant to Article 2 of the Federal Arbitration Act, does not fall within this Court's subject matter jurisdiction. That argument, of course, is wholly (and not surprisingly) unsupported by any legal authority. A petition under the Federal Arbitration Act, by definition, arises under federal law. Respondent also argues that this Court lacks personal jurisdiction over him and attempts to support that argument with an affidavit that omits any discussion whatsoever of the fact that Respondent has lived and worked in this State for the better part of at least the last three decades – contacts that included holding various medical and professional licenses, opening medical practices and other business, getting married, having kids, and getting divorced, and voting, just to name a few. None of Respondent's challenges has merit, and the Motion should therefore be denied.

1. This Court has subject matter jurisdiction under both 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity).

As the Court is no doubt well aware, there are two primary bases for federal jurisdiction - § 1331 for cases presenting claims that "arise under" federal law, and § 1332 where there is diversity among the parties. *Volvo Const. Equip. North America v. Clm Equip.*, 386 F.3d 581, 592 (4th Cir., 2004). Both are present in this case.

   a. This Court has federal question jurisdiction over the Petition.

First, the Petition unquestionably arises under federal law for purposes of federal question jurisdiction under § 1331. To determine whether a case "arises under" federal law for the purposes of establishing federal question jurisdiction under 28 U.S.C. § 1331, courts follow the well-pleaded complaint rule. Jurisdiction exists "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir., 2016) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). "[T]he vast majority" of cases arising under federal law "are those in which federal law creates the cause of action." *Pressl*, 842 F.3d at 303 (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)).

Here, there is no question that the Petition arises under federal law (it certainly does not arise under state law). The United States acceded to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards by adding a chapter to the Federal Arbitration Act. *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 380-81 (4th Cir., 2012). If there could possibly be any confusion or misunderstanding about that point, the relevant section of the Arbitration Act expressly provides that petitions to confirm foreign arbitral awards "arise under" federal law. Specifically, 9 U.S.C. § 203 states that actions to confirm foreign arbitral awards pursuant to Chapter 2 of the FAA "shall be deemed to arise under the laws and treaties of

the United States." That statutory provision goes on to expressly declare that "[t]he district courts of the United States … shall have original jurisdiction over such an action or proceeding" to confirm an award pursuant to the Convention. Plainly, the Federal Arbitration Act "creates the cause of action asserted." *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177 (4th Cir., 2014) ("Most commonly, 'a case arises under federal law when federal law creates the cause of action asserted.'").

Thus, as established on the face of the well pleaded Petition in this action, this matter arises under federal law, namely, the Federal Arbitration Act. The Petition plainly raises a federal issue, not a state one. *Garvin v. Alumax of South Carolina, Inc.*, 787 F.2d 910, 919-20 (4th Cir., 1986) (there is federal question jurisdiction where "The federal issue that gives rise to jurisdiction [is] part of the plaintiff's cause of action.").

Respondent posits essentially that the Court lacks subject matter jurisdiction because, Respondent says, Petitioner failed to comply with the Arbitration Act (which Petitioner vehemently denies) by submitting incomplete documentation of the existence of an arbitration agreement. This argument cannot stand for a number of reasons.

First, irrespective of whether the attachment is somehow incomplete, that fact cannot affect this Court's subject matter jurisdiction. Subject matter jurisdiction merely refers to those categories of cases that a court is empowered to decide. As noted above, that determination is made by reference to whether the plaintiff or petitioner's claim or cause of action was created by federal law and therefore raises federal, as opposed to state, law issues. That is plainly the case here.

Second, even if the sufficiency of the agreement attached to the Petition had implications for this Court's subject matter jurisdiction, the submitted agreement, read in conjunction with the

arbitration award (i.e., read in the context of the entirety of the submission), is sufficient. The Agreement contains the arbitration provision and is signed by Respondent. Doc. 1-2, pp. 16, 18. It thus serves the obvious purpose of allowing the Court to be sure that the respondent did in fact agree to arbitrate and was not subjected to arbitration without having consented to that procedure. As Respondent himself concedes, the requirement of submitting proof of the agreement is to be construed broadly in favor finding an agreement, and the agreement can be established by reference to letters, telegrams, and emails. Doc. 9, p. 9.

Moreover, as Respondent's own Motion makes plain, the issue of the existence of an agreement was raised and considered by the arbitration panel, and that panel made detailed factual findings on that issue. Doc. 9, pp. 9-11. Which leads to the third reason that Respondent's argument must be rejected – Respondent cannot raise the presence or absence of an agreement as a defense to the Petition. The main objective of the FAA as far as confirmation of awards is concerned is to provide a relatively summary process, not re-litigate issues already raised and ruled on in the underlying proceeding. As the Second Circuit has said:

> Under the New York Convention, as implemented and codified at 9 U.S.C. § 207, a party may petition a United States district court to confirm a foreign arbitral award that the party received within the previous three years. The court is to confirm the award unless it finds one of the seven grounds for refusal offered in Article V of the Convention. "Given the strong public policy in favor of international arbitration," the party seeking to avoid summary confirmation of an arbitral award has the heavy burden of proving that one of the seven defenses applies. Encyclopaedia Universalis, 403 F.3d at 90.

*VRG Linhas Aereas S.A. v. Matlinpatterson Global Opportunities Partners II L.P.*, 717 F.3d 322 (2nd Cir., 2013) .

It bears emphasizing the statutory basis for the Second Circuit's statement that "[t]he court is to confirm the award unless it finds one of the seven grounds for refusal offered in Article V of the Convention." Specifically, 9 U.S.C. § 207 expressly dictates that "[t]he court

shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition of enforcement of the award specified in the said Convention." Notably, the absence of a signed, written agreement (which actually exists, as discussed below) is not a defense that the respondent is entitled to raise in the confirmation proceeding. See Article 5 of the Convention, available at http://www.newyorkconvention.org/english (enumerating the only defenses to the confirmation and enforcement of the award). In fact, in setting out the defenses that a respondent may raise, Article 5 anticipates situations where there may be no written agreement. Specifically, subsection (d) provides that a respondent may raise as a defense that "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, *failing such agreement*, was not in accordance with the law of the country where the arbitration took place." (emphasis added). It necessarily follows that a written agreement is not an indispensable part of a confirmation proceeding.

Moreover, as Respondent well knows, both parties did in fact sign an agreement containing an arbitration provision. A true and accurate copy of that Agreement is attached hereto as Exhibit A. In suggesting otherwise and failing to acknowledge that fact, Respondent is playing fast and loose with the facts. Aside from the fact that Respondent is obviously aware of that mutually signed agreement, the arbitration panel found in the award that Respondent himself had sent emails conceding the existence of the agreement. Doc. 1-1, pp. 34-35. He cannot now be heard to contest that claim or take a contrary position – that defense is foreclosed as a matter of pre-existing fact and as a matter of law is not an available defense. Petitioner anticipates filing in the near future a Motion to Supplement and/or Amend the original filing to include an authenticated copy of the mutually signed agreement.[1] The process of getting the authenticated

---

[1] It bears noting that the offered amendments will relate back to the filing date of the original petition, a fact that is true even if the adequacy of the agreement does somehow implicate subject matter jurisdiction. *See Sunkyong Intn'l,*

Page **5** of **17**

Case 3:18-cv-00172-FDW-DSC   Document 13   Filed 08/07/18   Page 5 of 17

agreement may take some time, however, as Petitioner is an international businessman who is a citizen and resident of Vietnam who travels frequently. And the authentication process will need to be coordinated with certain persons and entities in Singapore.

Furthermore, it bears noting that public policy weighs heavily in favor of rejecting Respondent's arguments and confirming the award. As the Supreme Court has said:

> "If the United States is to be able to gain the benefits of international accords and have a role as a trusted partner in multilateral endeavors, its courts should be most cautious before interpreting its domestic legislation in such manner as to violate international agreements." We seek, when possible, to "construe ... statute [s] consistent with our obligations under international law."
>
> *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 539 (internal citations omitted).

The Supreme Court has further declared that the Convention and Convention Act demand that courts "subordinate domestic notions of arbitrability to the international policy favoring commercial arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 639, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Respondent signed an arbitration agreement; he had a full and fair opportunity to litigate the issue of whether there was in fact an arbitration agreement. He lost that argument. Under the FAA, he is not entitled to raise and re-litigate that issue. The domestic law of the United States, as well as the public policy implicated by the

---

*Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1252 (8th Cir.1987) (recognizing that an amended complaint can cure a defect in subject-matter jurisdiction); *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir.1994) (holding that relation back is appropriate "even when the amendment states a new basis for subject matter jurisdiction"); *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 887 (3rd Cir.1992) ("Relation back to the date of the original filing applies even when the amendment states a new basis for subject matter jurisdiction."); 6A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure, § 1497, at 94-95 (1990) (explaining that an amendment changes the legal theory on which the action initially was brought is of "no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading"); *In re Wireless Tele. Fed. Cost Recovery Fees Lit.*, 396 F.3d 922 (8th Cir., 2005); *Burnstein v. Columbia Broadcasting Sys., Inc.*, 291 F.2d 8, 9-10 (7th Cir.1961) (relating back amendment to perfect subject matter jurisdiction); *South Carolina Elec. & Gas Co. v. Ranger Constr. Co., Inc.*, 539 F.Supp. 578 (D.S.C.1982); Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874 (3rd Cir., 1992); E.R. Squibb & Sons, Inc. v. Lloyd's & Co., 241 F.3d 154, 163 (2d Cir. 2001) (citing Newman-Green, 490 U.S. at 829); Squibb, 241 F.3d at 163 ("As a general matter, it is widely accepted that amendments to cure subject matter jurisdiction relate back."); Le Blanc v. Cleveland, 248 F.3d 95 (2nd Cir., 1999) (amendments to cure subject matter jurisdiction relate back).

underlying international agreement, counsel strongly in favor of rejecting Respondent's Motion and proceeding to confirm the award.

In short, federal law creates the claim and the process that Petitioner has invoked to confirm the award. That is all that is required for a finding that the Petition "arises under" federal law for purposes of subject matter jurisdiction. And there are numerous reasons to reject Respondent's arguments to the contrary.

    b. This Court has diversity jurisdiction over the Petition.

In addition to it being evident that this Petition arises under federal law for purposes of § 1331, it is also apparent that this Court has diversity jurisdiction over the Petition. Pursuant to 28 U.S.C. § 1332, federal district courts have subject matter jurisdiction over cases between two parties of diverse citizenship where the amount-in-controversy exceeds $75,000. It is evident that those requirements are met in this case and were satisfied at the time the Petition was filed. Although the Petition admittedly does not invoke diversity jurisdiction, Petitioner intends to file a Motion to Amend the Petition in the near future. The Amended Petition will invoke not only federal question jurisdiction but also diversity jurisdiction.

2. This Court may exercise personal jurisdiction over Respondent consistent with Due Process.

As noted in Respondent's Memorandum in Support of his Motion, the personal jurisdiction question in this matter collapses into a question of whether the exercise of such jurisdiction is consistent with the constitutional guarantee of due process. Doc. 9, p. 12 (noting that North Carolina's long-arm statute permits the exercise of jurisdiction to the bounds of the Constitution). Accordingly, Petitioner turns directly to the constitutional analysis.

Under the Fourteenth Amendment's Due Process Clause, there are two paths permitting a court to assert personal jurisdiction over a nonresident defendant. The first path is "specific

jurisdiction," which may be established if the defendant's qualifying contacts with the forum state also constitute the basis for the suit. *Universal Leather, LLC v. Ar*, 773 F.3d 553, 559 (4th Cir., 2014). The second path is "general jurisdiction," which requires a showing that the defendant's contacts with the forum have been sufficiently "continuous and systematic" to support the conclusion that the defendant is "essentially at home" in the forum. *Id; Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

> a. At this stage of the proceedings, Petitioner need only make a prima facie showing of personal jurisdiction, which Petitioner can do.

As the Fourth Circuit has instructed, plaintiff "need not present evidence in making a prima facie case to oppose a motion to dismiss;" rather, "[m]ere allegations are sufficient" to satisfy the pleading requirements for personal jurisdiction. *Universal Leather, LLC v. Ar*, 773 F.3d 553, 560-61 (4th Cir., 2014) (quoting *Dowless v. Warren–Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307–08 (4th Cir.1986)). Where the court is not going to conduct an evidentiary hearing, the court is required to assume the credibility of Petitioner's version of the facts, and to construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to Petitioner. *See, e.g., Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.2003) (stating that absent an evidentiary hearing, the district court "must take all disputed facts and reasonable inferences in favor of the plaintiff" in determining whether the plaintiff has met its initial burden of proof with regard to personal jurisdiction); *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176–77 (7th Cir.1971) (accepting as true, for purposes of appeal, facts related in the plaintiff's affidavits and complaint when the parties' affidavits contained contradictory factual allegations with respect to personal jurisdiction); Furthermore, in assessing the materials submitted in support of the plaintiff's prima facie case, the court does not evaluate the credibility of the statements made, address any questions regarding the ultimate

admissibility of evidence, or decide whether plaintiff has proved its contentions. At the motion to dismiss stage, the court is only "required to determine whether … [plaintiff] has made … a prima facie showing" that defendant "purposefully availed itself of the privilege of doing business in North Carolina…." See, e.g., *Universal Leather, LLC v. Ar*, 773 F.3d at 561 (citing *Carefirst*, 334 F.3d at 396 for the proposition that when the district court decides a pretrial motion challenging personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction); *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir.2003) (stating that a plaintiff makes a prima facie showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction over the defendant).

> b. Petitioner can make a prima facie showing sufficient to warrant this Court's exercise of "general jurisdiction" over Respondent.

A court may exercise personal jurisdiction over a defendant whose contacts with the forum state have been so "continuous and systematic" that the defendant is "essentially at home" in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). While the paradigmatic forum for the exercise of general jurisdiction over an individual is the individual's domicile, the Supreme Court made clear in *Goodyear* that the individual's domicile is not the only potential forum where a court might exercise general jurisdiction over an individual. In fact, the Supreme Court itself has lumped citizenship in with domicile for jurisdictional purposes. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 180 L. Ed. 2d 765, 564 U.S. 873 (2011). Accordingly, an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere. *Reich v. Lopez*, 858 F.3d 55 (2nd Cir., 2017). What the courts are looking for, according to the Supreme Court, are "circumstances, or a course of conduct, from which it is proper to infer an intention to benefit

from and thus an intention to submit to the laws of the forum State." J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 180 L. Ed. 2d 765, 564 U.S. 873 (2011). The Court explained:

> These examples support exercise of the general jurisdiction of the State's courts and allow the State to resolve both matters that originate within the State and those based on activities and events elsewhere. By contrast, those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.

*J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 180 L. Ed. 2d 765, 564 U.S. 873 (2011) (internal citations omitted)

That is precisely the case here. It is evident that Respondent did not "live or operate primarily outside" of North Carolina. Just the opposite. He unquestionably lived and operated in North Carolina and is accordingly subject to general jurisdiction here. Petitioner has uncovered the following information to support this conclusion:

- NC Medical Practice. For at least twenty years (and likely longer than that) Respondent owned and operated a medical practice here, which he claims to have sold last December, approximately four months before the initiation of this lawsuit. As part of that practice part of that practice, Respondent financed the purchase of equipment to be located in this State that is the subject of UCC security interests enforceable in this State. See Exhibit B pp. 46-54.[2] Despite the implication to the contrary in his Affidavit, Respondent remains affiliated with that practice. During phone calls to the practice while the undersigned was attempting to effect service of the Petition, the support staff advised that Respondent still performed procedures and had interactions with patients, though they declined to provide specific information about his schedule. As his Facebook page shows (see Exhibit C), Respondent is still plainly affiliated with the NC medical practice. He is telling the Court one thing, and telling the rest of the world something else entirely. Indeed, the domain name for the Mooresville Practice is his own personal name and the website contains his picture and a discussion of his affiliation with the practice. See Exhibit D.

---

[2]Exhibit B is a true and accurate copy of a report from Westlaw that aggregates available public information about Respondent. Given the short turnaround time on filing this Response, Petitioner has not had time to obtain proof of these matters that would be admissible as an evidentiary matter. But as discussed above with respect to the prima facie showing that is necessary at this time, Petitioner need not submit admissible evidence to make a prima facie showing of personal jurisdiction. In fact, the Fourth Circuit has instructed that courts are not to consider admissibility of evidence in making the determination. *Universal Leather, LLC v. Ar*, 773 F.3d at 561. All that is required is a sufficient forecast of facts that, if proven to be true, would support the exercise of personal jurisdiction. To the extent that the Court would like to consider this issue after a full evidentiary hearing or thinks that more evidentiary materials are necessary to make the final determination, Petitioner respectfully requests that the Court hold this matter open and give Petitioner time to marshal the available evidence. Moreover, in the event that the Court intends to consider this matter on a more complete evidentiary record, Petitioner would respectfully request permission to conduct jurisdictional discovery prior to the Court's ruling.

- NC Addresses.  Exhibit B shows numerous addresses for Respondent, including 14316 Beatties Ford Road, Huntersville, NC 28078 (Exhibit B p. 2).  It shows the source of that information as a driver's license going back to 1991. (Exhibit B p. 2).  Petitioner effected service on Respondent at this address, which required that the Petition be left at his dwelling or usual place of abode.  Fed. R. Civ. P. 4(e)(2)(B).  Notably, Respondent has not challenged service.  Moreover, Respondent has reported multiple addresses in Mecklenburg and Iredell Counties over the last twenty-seven years.  (Exhibit B pp. 2-4).

- NC medical license.  Respondent obtained a medical license in North Carolina twenty-three years ago. (Exhibit B p. 8, 54-65).  As noted above, he has practiced medicine in Mecklenburg County for the vast majority of the time since.  During that time, he has been subject to numerous sanctions proceedings, including ones charging him with providing substandard care and exploiting patients in this State with regard to cancer diagnoses (Exhibit B p. 33, 35).

- NC Pharmacy license.  Respondent has also held a pharmacy license in this State for the last twenty-one years. (Exhibit B p. 56; 54-65).

- NC Businesses.   Respondent has incorporated and owned multiple businesses in Mecklenburg County over the last twenty-one years. (Exhibit B pp. 10-11; 68-73).  The "executive profile" section of the attached reports shows Respondent living in Mecklenburg County as the "confirmed homeowner."  (Exhibit B pp. 65-68).

- NC Voter Registration.  Respondent has been registered to vote for at least sixteen years in North Carolina (Exhibit B p. 2) and has actually voted in elections in the State of North Carolina.  (Exhibit B p. 13).

- NC Litigation.  Respondent has been a party in other litigation in the courts of this state, both criminal and civil.  As to the criminal proceedings, see Exhibit B pp. 6-7; 28-32.  As to the civil proceedings, see Exhibit B, p. 7.  Indeed, Respondent has been a defendant in a lawsuit in this very court dealing with property transactions in this district (3:10-cv-524, p. 40-43).  He has himself invoked the North Carolina court systems, and has a tax lien from the State of North Carolina (Exhibit B pp. 7, 40).

- NC Domestic Activities.  Respondent got married here (Exhibit B p. 5, 11); got divorced here (Exhibit B p. 5, 11); and, per his own Motion papers, went through custody disputes here.

- NC Property Transactions.   Respondent has engaged in property transactions in Mecklenburg County going back at least twenty-one years (Exhibit B p. 6; 25-27), and has engaged in other property transactions outside of North Carolina that listed a North Carolina address as the home mailing address (Exhibit B p. 25-27).

Page **11** of **17**

Case 3:18-cv-00172-FDW-DSC   Document 13   Filed 08/07/18   Page 11 of 17

- NC Utility Accounts. Respondent has had multiple utility accounts in Mecklenburg County. (p. 13), including a residential land line phone in Mecklenburg County. (Exhibit B p. 20-25).

All of the forgoing facts, when construed in the light most favorable to the Petitioner (as is appropriate for making a prima facie determination of personal jurisdiction) give rise to the conclusion that Respondent was until recently (and perhaps still is) "essentially at home" in North Carolina. He has certainly engaged in "substantial activity" within the State. See Doc. 9, p. 13 (arguing that the North Carolina long-arm statute requires "substantial activity" within the State). Indeed, in light of the information contained in Exhibit B, it is remarkable that Respondent can stand before the Court and suggest that his contacts with North Carolina have been "narrow and tenuous in scope," Doc. 9, p. 13, and that Respondent has not "availed himself of the jurisdiction of this Court by conducting any activities in North Carolina other than those on a random and sporadic basis." Doc. 9, p. 17. The available information shows that Respondent's contacts with North Carolina have been anything but random and sporadic or narrow and tenuous.

It should be noted that very little in Respondent's Affidavit addresses the various activities listed herein and reflected in Exhibit B, which support the exercise of jurisdiction. Much of it amounts to a denial that he now has a residence, or business, or employees, in the State of North Carolina. It says nothing about his decades-long extensive conduct and activities in this State. The Affidavit also contains several paragraphs that would suggest that a challenge to service is coming, but that challenge never materializes in the Motion or Memorandum in Support. Much of the rest of it deals with matters that were the subject of the arbitration and have already been decided and an award issued. As noted herein, there are very few defenses available to enforcement of the award, and the Affidavit does not even attempt to establish any of them. At

Page **12** of **17**

Case 3:18-cv-00172-FDW-DSC   Document 13   Filed 08/07/18   Page 12 of 17

any rate, any defenses Respondent believes he has to the Petition can be addressed once the Court denies the Motion to Dismiss and Respondent files a response.

Furthermore, the fact that Respondent sold his business a couple of months before the filing of the subject Petition and may have now moved out of the United States does not suddenly render it fundamentally unfair for North Carolina courts to exercise personal jurisdiction over him. *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir., 2012) ("Fairness is the touchstone of the jurisdictional inquiry."). At the very least, given that Petitioner is only required to make a prima facie showing of jurisdiction at this point, with all materials and allegations construed in Petitioner's favor, a finding that the court has personal jurisdiction is inescapable.

3. This Court may exercise specific jurisdiction over Respondent.

"Fairness is the touchstone of the jurisdictional inquiry." *Tire Eng'g*, 682 F.3d at 301. With that in mind, the federal courts employ a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant comports with the requirements of due process. *Id.* at 301-02. Specifically, the courts consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.*

Under the applicable factors, this Court may exercise specific jurisdiction over Respondent with respect to the Petition. The extent to which Respondent purposefully availed himself of the privilege of living and conducting business in North Carolina is chronicled above. As will be explained more fully in a moment, Petitioner's effort to register the subject arbitration award here arises from Respondent's contacts with North Carolina, and, as will also be addressed

momentarily, it is not the least bit constitutionally unreasonable to exercise personal jurisdiction over Respondent.

To understand why the exercise of specific personal jurisdiction satisfies this three-factor test, it is perhaps easiest to simply address the arguments Respondent makes. Respondent attempts to defeat specific jurisdiction by arguing that there is no connection between the dispute already decided in the underlying arbitration and the State of North Carolina. But Petitioner is not attempting to have the Court exercise personal jurisdiction over Respondent for purposes of deciding that dispute. The underlying dispute has already been decided. The issue is whether the Court can exercise specific jurisdiction over Respondent on the Petition to Confirm the Award. The Petition arises out of Respondent's contacts with this State because, given his extensive, continuous, and systematic contacts with this State, it is imminently reasonable (and fair) for Petitioner to come to this State in a search for assets to satisfy the award and ultimately the judgment that will result from this process. The dispute now is not the underlying dispute from the arbitration; the dispute now is over satisfaction of the arbitration award. Given Respondent's extensive contacts and activities in this State, it is not unfair, unreasonable, or unconstitutional for Petitioner to seek enforcement here or for Respondent to have to answer here. In that sense, it is very much Respondent's contacts with the State of North Carolina that form the basis for the Petition. Respondent extensively and purposefully availed himself of the privilege of conducting numerous activities in North Carolina; indeed, his purposeful availment was of such a magnitude as will support the exercise of general jurisdiction over him. The Petition arises out of those contacts in the sense that, having already secured an arbitration award against Respondent, Petitioner is seeking to confirm that award in the forum where Respondent has had extensive interaction over the last twenty plus years to try to locate assets to satisfy the

Page **14** of **17**

Case 3:18-cv-00172-FDW-DSC   Document 13   Filed 08/07/18   Page 14 of 17

award. There is nothing the least bit "constitutionally unreasonable" about doing so, and nothing the least bit unfair about it. Indeed, as "[f]airness is the touchstone of the jurisdictional inquiry," what would be truly unfair would be to allow Respondent to evade answering the subject Petition in the forum he has made his home for the better part of the last three decades. There is nothing even remotely burdensome about Respondent being required to answer the Petition; as noted above, this is effectively a summary procedure with very few defenses. Respondent has not indicated which, if any, of the defenses he may have to the Petition. Moreover, Respondent's contacts and conduct have been such that he should reasonably anticipate being haled into court in North Carolina (as he already has been numerous times), where he has been essentially at home for a long period of time.

Respondent also wrongly posits that Petitioner is relying solely on property ownership as a basis for asserting personal jurisdiction over Respondent in this matter. As shown above, that just is not so. Respondent had lengthy continuous and systematic contacts with this State that touched every area of his life – personal and professional. To the extent that it may be necessary to amend the Petition to expressly allege each of these factors, Petitioner will gladly offer an Amended Petition.

4. Venue is proper in this Court.

Respondent argues that venue is improper in this Court because the Court lacks personal jurisdiction over Respondent. *See* 9 U.S.C. § 204. For the reasons stated above, this Court may exercise personal jurisdiction over Respondent and venue is proper here.

5. Conclusion

Respondent advanced three grounds for challenging the Petition and suggesting that it be dismissed: lack of subject matter jurisdiction, lack of personal jurisdiction, and lack of venue.

As demonstrated above, those challenges are without merit. In each event, Respondent has omitted and failed to otherwise acknowledge critical and determinative facts. With respect to subject matter jurisdiction, he glossed over the mutually signed agreement he knows exists. With respect to personal jurisdiction, he made no mention of the three decades of living and working in this State that (even if his affidavit is to be credited, which it should not be) only recently ended a couple of months before institution of this action. How he could stand before the court and suggest that his contacts with this State have been random and sporadic or narrow and tenuous is remarkable at best. While there are other problems with Respondent's arguments, which are discussed above, his failure to disclose and discuss material facts is telling. Respondent cannot be trusted. Petitioner only wishes he had known that before entering into the business deal that was the subject of the underlying arbitration. WHEREFORE, Petitioner respectfully requests that the Court deny the Motion to Dismiss.

This the 7th day of August, 2018.

THE McINTOSH LAW FIRM, P.C.

s/Joel M. Bondurant, Jr.
JOEL M. BONDURANT, JR.
Attorney for Petitioner, NC Bar No. 29621
P.O. Box 2270
Davidson, NC 28036-2270
Phone (704) 892-1699 Fax (704) 892-8664
joel@mcintoshlawfirm.com

CERTIFICATE OF SERVICE

I hereby certify that on the date specified below, I electronically filed the attached Motion for Extension of Time with the Clerk of Court using the CM/ECF System, and that said Motion shall therefore be electronically served via NEF through the Court's system:

Stacy B. Cordes
Attorney for Respondent
122 Cherokee Road, Suite 1
Charlotte North Carolina 28207

This the 7th day of August, 2018

                                        s/Joel M. Bondurant, Jr._____
                                        JOEL M. BONDURANT, JR.
                                        Attorney for Petitioner, NC Bar No. 29621
                                        P.O. Box 2270
                                        Davidson, NC 28036-2270
                                        Phone (704) 892-1699 Fax (704) 892-8664
                                        joel@mcintoshlawfirm.com