UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00172-FDW-DSC

RACHAN DAMIDI REDDY,          )
                              )
        Plaintiff,            )
                              )
vs.                           )
                              )         ORDER
RASHID A. BUTTAR,             )
                              )
        Defendant.            )
                              )

THIS MATTER is before the Court on Defendant Rashid A. Buttar's Motion to Dismiss Plaintiff's Petition to Confirm Foreign Arbitral Award (Doc. No. 8) pursuant to Rules 12(b)(2) and (12)(b)(3) of the Federal Rules of Civil Procedure. For the reasons below, Defendant's Motion to Dismiss is DENIED.

## I. FINDINGS OF FACT[1]

**A.      Foreign Arbitration Award**

1.      This action arises out of a foreign arbitral award based on an alleged breach of a Short Sale and Purchase Agreement by Buttar. (Doc. No. 1, p. 2).

2.      The agreement provided that any disputes arising out of or in connection with the contract shall be arbitrated in accordance with the Arbitration Rules of Singapore International Arbitration Centre ("SIAC Rules"). (Doc. No. 1, p. 2).

3.      On April 10, 2015, the SIAC handed down its Final Award in favor of Plaintiff as follows:

---

[1] Rule 52(a) of the Federal Rules of Civil Procedure states, in pertinent part, "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." Fed. R. Civ. P. 52(a). In the present case, however, this Court is of the opinion that it will be useful to provide a detailed discussion on Defendant Rashid A. Buttar's Motion to Dismiss. However, any statements in this Order regarding Defendant's actions are made solely for the purpose of determining the present motion.

"The [Defendant] is ordered to repay in full to [Plaintiff] the monies previously paid to [Defendant] by the [Plaintiff] amounting to U.S. $1,550,000.00" plus interest at the rate of 5.33% per annum from the date of the commencement of the Arbitration to the date of the Award. (Doc. No. 1, p. 2-3). The SIAC furthered awarded Plaintiff $381,479.34 in legal fees and disbursements; $26,550.68 in expert witness fees; $7,231.96 in other miscellaneous expenses; and $79,439.80 for the costs of the arbitration. Id.

4. Plaintiff seeks confirmation of the arbitration award issued under the New York Convention. (Doc. No. 1).

**B.    Residence**

5. From at least 1996 until June or July of 2016, Buttar was domiciled in Mecklenburg, North Carolina. (Doc. No. 38-2, pp.1-2); (Doc. No. 38-3, pp. 1-2); (Doc. No. 38-4); (Doc. No. 39, p. 4).

6. Buttar started a family in North Carolina, and Buttar's family remains in North Carolina. (Doc. No. 38-3, pp. 2-3); (Doc. No. 38-5. p. 1).

7. Buttar has maintained multiple North Carolina addresses as his place of residence. (Doc. No. 13, pp. 2-4).

8. Buttar was issued a Resident Visa on January 11, 2016. (Doc. No. 21-1, p. 34).

9. In mid-December 2017, however, Buttar and his attorney signed and submitted a Consent Order in Buttar's state court matter containing certain "Findings of Fact," including that, as of December 19, 2017, Buttar and his wife "are citizens and residents of Mecklenburg County, North Carolina." (Doc. No. 38-5, pp. 1, 3). The Consent Order identified 14316 Beatties Ford Road, Huntersville, NC 28078 as Buttar's present address. Id. at 3.

10. In April 16, 2018, Buttar's attorney in his state court matter filed a Motion to Withdraw as Counsel, identifying Buttar's "current mailing address" as 14316 Beatties Ford Road, Huntersville.

2

(Doc. No. 38-6, p. 1).

11. Buttar was issued a Permanent Resident Visa on November 1, 2018, (Doc. No. 24-1, pp. 35-36), approximately seven months after the petition was filed.

12. To obtain a Permanent Resident Visa, Buttar was required to remain in the country for at least 184 days for two consecutive years. (Doc. No. 39-5).

13. However, there are no leases or purchase documents associated with Buttar's move to New Zealand. (Doc. No. 38-7, p. 10); (Doc. No. 38-11).

**C.     Voting Registration**

14. Buttar is registered to vote in North Carolina and voted absentee in the November 2016 presidential election. (Doc. No. 13-2, p. 13).

**D.     Place of Employment or Business**

15. Buttar has held a medical license in North Carolina since 1995. (Doc. No. 38-7, p. 6); (Doc. No. 38-11, p. 2).

16. Buttar has held medical licenses in other jurisdictions but does not currently maintain those licenses; the only state that Buttar maintains a medical license is North Carolina. (Doc. No. 38-7, p. 6).

17. Buttar has held a pharmacy license in North Carolina since 1997. (Doc. No. 38-3, p. 2).

18. Buttar started multiple businesses in North Carolina. (Doc. No. 38-3, p. 3).

19. Buttar executed a Sale and Purchase Agreement in early January 2018 for final execution no later than March 1, 2018. (Doc. No. 39-2, p. 2).

20. The new business created when Buttar's practice was sold, CFAM-NC, LLC, is listed as Defendant's practice according to the North Carolina Secretary of State filings. (Doc. No. 38-19).

21. Buttar continues to serve as the supervising professional over others employed at or in

contractual relationships with the medical practice. (Doc. No. 38-7, pp. 10-11); (Doc. No. 38-16; Doc. No. 38-14).

22. In June of 2018, Buttar was still sending emails holding himself out as the medical director for the facility. (Doc. No. 38-12); (Doc. No. 38-4); (Doc. No. 41); (Doc. No. 38-13); (Doc. No. 38-7, pp. 7-9).

**E.   Payment for Utilities**

23. Buttar has maintained utility accounts in North Carolina, including a residential land line. (Doc. No. 13-2, pp. 13, 20-25).

24. Buttar established utility services in New Zealand in 2016. (Doc. No. 39-4, pp. 1-6). However, there is no evidence Buttar made payments on any of these service accounts or incurred any obligation to pay for utilities. (Doc. No. 38-7, p. 5); (Doc. No. 38-11).

**F.   Receipt of Mail**

25. Buttar receives utility bills to a New Zealand P.O. Box. (Doc. No. 24-1, pp. 42-45). However, Buttar elects to receive his legal documentation at a North Carolina address. (Doc. No. 39-6).

26. In fact, Buttar was served with notice of his state court hearing at 14316 Beatties Ford Road, Huntersville, NC 28078 on April 20, 2018. (Doc. No. 38-6).

**G.   Person's Declarations**

27. Buttar maintains that he began establishing domicile in New Zealand no later than 2015. (Doc. No. 39-2, pp. 1-3).

28. Buttar maintains that his current primary residence is 116 Waipouri Lane, Tutukaka 0173, New Zealand. (Doc. No. 39-3, pp. 2-3).

29. Buttar maintains that he is neither a resident of North Carolina, nor the United States, and

4

he has not been for a significant period of time; he owns no real property or other assets in North Carolina; he pays no property taxes to the State of North Carolina; he neither owns nor operates any financial accounts in North Carolina; he does not have a North Carolina driver's license; he has no employees and is not the registered agent or officer for any business in North Carolina; and he is not subject to any contractual obligations in North Carolina. (Doc. No. 39-2, pp. 1-3).

## II. STANDARD OF REVIEW

I. Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of proving that the Court has personal jurisdiction over a defendant by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); accord Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). Where, as here, the parties have had "a fair opportunity to present to the court the relevant facts and their legal arguments before it rules on the motion," the plaintiff must prove facts, by a preponderance of the evidence, that demonstrate the Court's personal jurisdiction over Defendant. Grayson, 816 F.3d at 268-69; see Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003).

To establish the court's exercise of personal jurisdiction over a non-resident defendant, the plaintiff must prove, by a preponderance of the evidence, that exercising jurisdiction will (1) comply with the forum state's long-arm statute and (2) comport with the due process requirements of the Fourteenth Amendment. See Carefirst, 334 F.3d at 396 (citation omitted). Because North Carolina's long-arm statute has been construed to extend as far as due process allows, Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir.

5

2001), this two-pronged test is collapsed into the single inquiry of whether the exercise of personal jurisdiction over defendant comports with due process. Accordingly, the court must analyze whether jurisdiction over Defendant Buttar is consistent with the Due Process Clause of the Fourteenth Amendment. See id.

A plaintiff can rely on either general or specific jurisdiction to establish personal jurisdiction over a defendant. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). When the cause of action arises out of the defendant's contacts with the forum, a court may seek to exercise specific jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised. "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." Bristol-Myers Squibb Comp. v. Superior Court of Cal., San Francisco Cnty., 137 S.Ct. 1773, 1780 (2017) (citations omitted). Regardless of whether a plaintiff relies on general or specific jurisdiction to assert personal jurisdiction over a defendant, "[f]airness is the touchstone of the jurisdictional inquiry, and the minimum contacts test is premised on the concept that a [defendant] that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co. Ltd., 682 F.3d 292, 301 (4th Cir. 2012).

II. Rule 12(b)(3)

Venue is appropriate in "a judicial district in which any defendant resides, . . . in which a substantial part of the events or omission giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391 (2016). Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a complaint for improper

venue. When a 12(b)(3) motion to dismiss is filed, the plaintiff then bears the burden to "establish that venue is proper in the judicial district in which the plaintiff has brought the action." Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F.Supp. 519, 526 (M.D.N.C.1996). If the court finds venue to be improper, the court shall dismiss or, in the interest of justice, transfer the case to the district or division in which the case could have been brought. 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." White v. Wal-Mart Distribution Center, No. 3:08-cv-543-FDW, 2009 WL 275835, at *1 (W.D.N.C. Feb. 4, 2009) (citation omitted).

### III. CONCLUSIONS OF LAW

I. Personal Jurisdiction

While the New York Convention provides that federal district courts have original jurisdiction over actions to confirm arbitration awards, "it does not confer personal jurisdiction when it would not otherwise exist. Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 212–13 (4th Cir. 2002). Here, there is no need for extensive analysis of specific jurisdiction. Plaintiff does not allege that the suit arises out of or relates to Buttar's contacts with the forum. Thus, if this Court has personal jurisdiction over Buttar, it must be the result of general jurisdiction, not specific jurisdiction.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 517 U.S. 117, 125 (2014) (citing Fed. Rule Civ. Proc. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is
7

located")).[2]  "A court may assert general jurisdiction [over a corporate entity] . . . when [the defendant's] affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." Goodyear, 564 U.S. at 919.  However, "[w]hen the defendant is an individual and *not* a corporate entity 'the paradigm forum for the exercise of general jurisdiction is the individual's domicile'"[3] Brown v. Advanced Dig. Sols., No. 5:17-cv-00034-RLV-DSC, 2017 WL 3838640, at *4 (W.D.N.C. Sept. 1, 2017) (quoting Goodyear, 564 U.S. at 923-24) (emphasis added); see also Milliken v. Meyer, 311 U.S. 457, 463–64 (1940) (For a natural person, general personal jurisdiction exists in her state of domicile.); Joseph v. Joseph, No. 3:18-cv-003-MOC-DCK, 2018 WL 4137094, at *4 (W.D.N.C. July 9, 2018) ("First, for an individual defendant—as opposed to a corporate defendant—"the paradigm forum for the exercise of general jurisdiction is the individual's domicile."); Ibekwe v. Blood Oranges, LLC, No. 3:18-cv-00089-FDW, DCK, 2018 WL 2434069, at *2 (W.D.N.C. May 30, 2018) ("A court may exercise general personal jurisdiction over a defendant when that defendant is essentially 'at home' in the forum . . . For individual defendants, it typically means their domicile.") (citation omitted).

Domicile is "an individual's place of residence where he intends to remain permanently or indefinitely and to which he intends to return whenever he is away." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., No. 3:09-CV-220-MU, 2010 WL 1434298, at *2 (W.D.N.C. Apr. 6,

---

[2] By failing to timely assert insufficient service of process, Buttar has waived that argument. See Tate v. Smith, No. 1:14-cv-125, 2016 WL 4444856, at * 5-6 (M.D.N.C. Aug. 23, 2016). Accordingly, the Court's analysis is limited to whether Buttar is subject to the general jurisdiction of this state.

[3] Although the United States Supreme Court has not definitively answered whether "the 'continuous and systematic contacts' analysis can be applied to individual defendants, the Supreme Court has strongly implied that it cannot and that domicile is the primary basis for a court's exercise of general personal jurisdiction over an individual defendant." Carnrick v. Riekes Container Corp., 2016 WL 740998, at *2 (D. Colo. Feb. 24, 2016) (citing Burnham v. Superior Court of Cal., 495 U.S. 604, 610 n.1 (1990) ("It may be that whatever special rule exists permitting continuous and systematic contacts to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations....")). Accordingly, to the extent Plaintiff attempts to confer personal jurisdiction over Buttar based on "continuous and systematic contacts" analysis, see (Doc. 38, pp. 3-6), the Court rejects that argument.  Consistent with prior case law from this Court, see Brown, 2017 WL 383640, at *4, we find that, absent a finding that Buttar is domiciled in North Carolina at the commencement of this action, this Court lacks general jurisdiction.

2010) (citing Hollowell v. Hux, 229 F.Supp. 50, 52 (E.D.N.C. 1964)). Where "intent to remain" is challenged, a party's intent is determined by weighing the totality of circumstances, including "current residence[;] voting registration and voting practices[;] location of personal and real property[;] location of brokerage and bank accounts; memberships in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes[,]" UDX, LLC v. Heavner, 533 B.R. 511, 515-16 (M.D.N.C. 2015), "the person's declarations, . . . payment for utilities, . . . and receipt of mail," Mayfield, 2010 WL 1434298, at *2 (quoting Griffin v. Matthews, 310 F. Supp. 341, 343 (M.D.N.C. 1969)). While no one factor is determinative, courts have found that some factors carry more weight than others. Movement Mortgage, LLC v. McDonald, No. 3:17-cv-00716-RJC-DSC, 2018 WL 3901304, at *2 (W.D.N.C. June 11, 2018) (citing Mayfield, 2010 WL 1434298, at *2). For instance, voting and voter registration "raises a presumption that the voter is a citizen in the state in which he votes, and the presumption must be rebutted by evidence showing a *clear intention* that his citizenship is otherwise." Griffin, 310 F.Supp. at 343 (emphasis added) (internal quotations and citations omitted). On the other hand, a party's own statements of his intended domicile are "not conclusive," Webb v. Nolan, 361 F. Supp. 418, 421 (M.D.N.C. 1972), aff'd, 484 F.2d 1049 (4th Cir. 1973), and "[a]re entitled to little weight when in conflict with facts," Griffin, 310 F.Supp. at 343 (internal quotations and citation omitted). The domicile of the party must be determined as of the date the action commenced.[4]

---

[4] This Court notes that no court has addressed the exact issue of whether domicile must be established at the commencement of an action brought under 28 U.S.C. § 1331 for a court to exercise general jurisdiction over an individual defendant. However, this Court finds, based on its reading of the plain language of the statute, that a plaintiff must prove that the defendant is domiciled in the forum State at the commencement of the action. Section 1331 specifically provides that "[t]he district courts shall *have* original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (emphasis added). The plain text of this provision, because it is expressed in the present tense, requires that personal jurisdiction over the individual defendant, specifically the defendant's domicile, be determined at the time the suit is filed. The focus on the significance of the present tense is faithful to the "longstanding principle that 'the jurisdiction of the Court depends upon the state of

Once a domicile has been acquired, that domicile "is presumed to continue until it is shown to have been changed." Scenera Research LLC v. Morris, No. 5:09-cv-412-FL, 2011 WL 666284, at * 4 (E.D.N.C. Feb. 14, 2011) (citing McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286–87 (3d Cir. 2006)). "This principle gives rise to a presumption favoring an established domicile over a new one." Id. To effect a change in domicile, an individual "must take up residence in a different domicile with the intent to remain there." Janeau v. Pitman Mfg. Co., No. C-C-90-194-V, 1991 WL 538679, at *3 (W.D.N.C. Oct. 25, 1991) (citations omitted); see also Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989); Johnson v. Advance Am., 549 F.3d 932, 937 n. 2 (4th Cir. 2008). Both factors must be met; "either without the other is insufficient." Mitchell v. United States, 88 U.S. 350, 353 (1874). Accordingly, "[w]here a change in domicile is alleged, the burden of proof rests upon the party making the allegation." Desmare, 93 U.S. at 610. The burden of persuasion, nevertheless, remains with the proponent of federal jurisdiction. Scenera Research, 2011 WL 666284 at * 4 n.2 ("Most of the courts of appeal interpreting this rule have concluded that the presumption favoring an established domicile places the burden of production on the party alleging a change in domicile, but does not affect the burden of persuasion, which remains with the proponent of federal jurisdiction.") (internal quotation and citations omitted).

Here, although there is some evidence that suggests that Buttar was no longer domiciled in North Carolina at the time Reddy commenced this action, the weight of the evidence is in favor of Buttar's domiciliary in the state as of April 6, 2018. Both parties concede that Buttar was a citizen and resident of North Carolina from 1996 to at least June or July of 2016. (Doc. No. 38-2, pp.1-

---

things at the time of the action brought.'" Keene Corp. v. United States, 508 U.S. 200, 207 (1993) (quoting Mollan v. Torrance, 22 U.S. 537, 539 (1824)). Accordingly, the Court finds that to prove that Defendant is subject to the general jurisdiction of this Court, Plaintiff must show by a preponderance of the evidence that Defendant was domiciled in North Carolina when the Petition was filed.

2); (Doc. No. 38-3, pp. 1-2); (Doc. No. 38-4); (Doc. No. 39, p. 4). Over the last twenty-one years, Buttar has started multiple businesses in North Carolina. (Doc. No. 38-3, p. 3). He has maintained utility accounts in North Carolina, including a residential land line.[5] (Doc. No. 13-2, pp. 13, 20-25). Buttar has maintained multiple North Carolina addresses as his place of residence. (Doc. No. 13, pp. 2-4). Buttar married and began a family in North Carolina. (Doc. No. 38-3, p. 3); (Doc. No. 38-5. p. 1). Moreover, Buttar still maintains significant family ties to North Carolina as his ex-wife and children still live in the state. See (Doc. No. 38-3, p. 2); see also (Doc. No. 38-7, p. 6) ("I come back—I come to North Carolina all the time. I have children there."). Buttar still receives mail, particularly legal documentation, in North Carolina.[6] (Doc. No. 38-6). In fact, on April 20, 2018, Buttar's own attorney served notice on Buttar of a state court hearing at Buttar's North Carolina address. Id. at 3-4. Buttar's sole bank account lists a North Carolina address. (Doc. No. 38-11). He has held an active North Carolina medical license since 1995, and this medical license is the only one he maintains.[7] (Doc. No. 38-7, p. 6). Buttar further declares that he has continued to maintain an active North Carolina pharmacy license since 1997. (Doc. No. 38-3, p. 2). While records indicate that Buttar sold his former medical practice prior to the commencement of this action, see (Doc. No. 24-1, pp. 48-52), the new business created when Defendant's practice was sold, CFAM-NC, LLC, is listed as Defendant's practice according to the North Carolina Secretary of State filings. (Doc. No. 38-19). Furthermore, evidence suggests that

---

[5] Though Buttar has presented evidence of utility bills in New Zealand, see (Doc. No. 24-1, pp. 42-47), Buttar has provided no evidence of payment to these accounts nor indicated that he incurred any obligation for payment of any of the utilities, see (Doc. No. 38-7, p. 5); (Doc. No. 38-11); but see Bagheri v. Bailey, No. 1:14-cv-77, 2015 WL 6738306, at *3 n. 5 (W.D. Va. Nov. 4, 2015) ("Mr. McKee's mother-in-law testified during her deposition that the couple was to pay her $300 a month to help cover utilities and provide a small rent payment."). Accordingly, the Court finds this evidence holds little weight.

[6] The Court finds that while Buttar has produced evidence that he receives mail to a P.O. Box in New Zealand, see (Doc. No. 24-1, pp. 42-45), as noted above, the Court finds it compelling that Buttar elects to receive legal documentation at his North Carolina address.

[7] Buttar has held medical licenses in other jurisdictions but does not currently maintain those licenses. See (Doc. No. 38-7, p. 6). Buttar has never held a medical license in New Zealand. Id.

Defendant appears to maintain significant involvement in the medical practice, including serving as the supervising professional over others employed at or in contractual relationships with the medical practice.[8] (Doc. No. 38-7, pp. 10-11); see also (Doc. No. 38-16); (Doc. No. 38-14). Additionally, and perhaps most importantly, Buttar is registered to vote in North Carolina and voted absentee in the November 2016 presidential election. (Doc. No. 13-2, p. 13). This voter registration in itself raises a presumption that Buttar is a citizen of North Carolina. See Griffin, 310 F.Supp. at 343; see also Hall v. Nestman, No. 5:14–cv–00062, 2015 WL 3948158, at *4 (W.D. Va. June 29, 2015).

While Buttar has amounted some evidence to suggest that he has abandoned his North Carolina domicile and that he is now a domiciliary of New Zealand, the Court nevertheless finds that Buttar has failed to satisfy his burden of production to show that he had changed his domicile from North Carolina at the time this action was commenced. See Desmare, 93 U.S. at 610 ("Where a change in domicile is alleged, the burden of proof rests upon the party making the allegation."). In his affidavit, Buttar attests that he owns no real property or other assets in North Carolina; he pays no property taxes to the State of North Carolina; he neither owns or operates any financial accounts in North Carolina; he does not have a North Carolina driver's license; he has no employees and is not the registered agent or officer for any business in North Carolina; and that he is not subject to any contractual obligations in North Carolina. (Doc. No. 10, p. 1). However,

---

[8] According to public records provided by Reddy, at the time this action commenced, Buttar was still serving as the supervising physician for Sara Barbour, NP and Jane Garcia, NP. See (Doc. No. 38-14). By statute, see N.C. Gen. Stat. §§ 90-18.2, 90.18(14), and pursuant to North Carolina Board of Nursing Regulations, see 21 NCAC 32M .0101, nurse practitioners must practice under a collaborative practicing agreement (CPA) with a licensed physician. Under the regulations, the CPA is an "arrangement for nurse practitioner-physician *continuous* availability to each other for *ongoing supervision, consultation, collaboration, referral, and evaluation* of care provided by the nurse practitioner." 21 NCAC 32M .0101(4) (emphasis added). Given the supervisory role that Buttar maintains over those employed at the North Carolina practice, the Court finds that Buttar's business ties weighs in favor of finding that Buttar remains domiciled in North Carolina. See UDX, LLC, 533 B.R. at 515-16 (finding that a party's place or business or employment weighs in favor of establishing domicile).

because the Court finds that there is no evidence that Buttar has done any of these things in New Zealand, these factors say nothing about Buttar's purported domicile in New Zealand. See Gersh v. Anglin, 2018 WL 2107802, at *5 (D. Mont. Mar. 21, 2018) ("[Defendant] begins by addressing the remaining Lew factors,[9] and stating that he does not own any real property in Ohio or maintain any residence there, does not own a motor vehicle registered in Ohio, does not hold any professional license issued by the State of Ohio, and does not pay income or other taxes to the State of Ohio. Significantly, however, [the defendant] does not claim to have done any of these things in the Philippines, Greece, Cambodia, or anywhere else for that matter. Because there is no evidence that [the defendant] engaged in any of these activities in Ohio or elsewhere, these Lew factors are essentially neutral and say nothing about [defendant]'s domicile.").

Buttar relies heavily on his New Zealand address, see (Doc. No. 39-3, p. 2-3); (Doc. No. 24-1, pp. 42-45), and visa documentation,[10] see (Doc. No. 24, p. 13); (Doc. No. 39, p. 5), in support of his contention that he is now domiciled in New Zealand. Specifically, Buttar cites repeatedly to the requirements for obtaining a permanent visa, namely the requirement that the applicant remain in the country for at least 184 days for two consecutive years. See (Doc. No. 24, p. 13); (Doc. No. 39, p. 5). While this Court acknowledges that "a person's place of residence is *prima facie* evidence of a person's domicile, see Welles v. Aamodt, No. 5:15-cv-613-BO, 2016 WL 1625503, at *2 (E.D.N.C. Apr. 21, 2016) (citation omitted), and obtaining a permanent resident visa would normally constitute clear evidence of one's domicile, see Jes Solar Co., Ltd. v. Matinee Energy, Inc., 2015 WL 10939972 *10 (D. Ariz. Mar. 30, 2015) (Although "[t]he Court does not confuse [the] possibility of 'permanent' immigration status with the domicile requirement, . . .

---

[9] The Lew factors closely track the Mayfield factors for determining a party's domicile. See Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986) (applying the same factors to determine a party's domicile).
[10] The Court does note that Buttar did not obtain a permanent resident visa until seven months after this present action was filed.

13

[o]btaining permanent resident status would be clear evidence that [defendant] intended to remain in South Korea, indefinitely.), neither a party's residence nor permanent resident visa are dispositive, see Welles, 2016 WL 1625503, at *2 (citing Johnson, 549 F.3d at 937 n.2 ("For purposes of diversity jurisdiction, residency is not sufficient to establish citizenship.")) (finding that the defendant's purchase of a home in North Carolina was not sufficient to establish that the defendant changed his domicile from Pennsylvania to North Carolina); Gersh, 2018 WL 2107802, at *5 (explaining that obtaining a resident visa is instructive but not dispositive). Even if the Court were to find that Buttar's evidence supports a finding that Buttar is a resident of New Zealand,[11] "a mere change in residence by itself is insufficient to alter one's domicile or citizenship." Janeau, 1991 WL 538679, at *3; see also Dyer v. Robinson, 853 F.Supp. 169, 172 (D. Md. 1994) (citing Williamson v. Osenton, 232 U.S. 619 (1914)) (A person may have more than one residence.). Furthermore, such evidence of Buttar' place of residence only relates to *one* factor under the Mayfield factor test. Given the totality of the evidence, as well as the other factors this Court has considered under the Mayfield factor test, the weight of all the evidence supports a finding that Buttar was domiciled in North Carolina at the commencement of this action.

Thus, while Buttar's arguments have been well received and placed in the balance, given the specific circumstances presented in this case, and considering the evidence in its entirety, the Court finds that Reddy has shown by a preponderance of the evidence that Buttar was domiciled in North Carolina when this action was commenced.[12] See Frye v. Southern Lithoplate, Inc., No. 3:13–cv–63, 2013 WL 6246780, at *3 (N.D.W.Va. Dec. 3, 2013) ("Courts determine domicile on

---

[11] The Court recognizes that Reddy has cited to conflicting evidence in the record to suggest that Buttar still resided at the Mecklenburg County address when this action commenced. See (Doc. No. 38, p. 6); (Doc. No. 44, p. 5).
[12] Because the Court finds that Buttar was domiciled in North Carolina at the commencement of this action, the Court declines to address Plaintiff's arguments regarding judicial estoppel.

14

a case by case basis, considering all of the circumstances surrounding an individual's situation.") (citation omitted). Thus, the Court finds that it may exercise personal jurisdiction over Buttar.

II. Venue

The New York Convention restricts venue for the enforcement of foreign arbitral awards to any court where "an action or proceeding with respect to the controversy between the parties could be brought" under the jurisdictional standards outlined above. 9 U.S.C. § 204. Here, because this Court finds that it may exercise personal jurisdiction over Buttar, the Court similarly finds that venue is proper.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (Doc. No. 8) is DENIED.

IT IS SO ORDERED.

Signed: May 14, 2019

Frank D. Whitney
Chief United States District Judge