UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00172-FDW-DSC

| | |
|---|---|
| RACHAN DAMIDI REDDY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| RASHID A. BUTTAR, ) | |
| ) | |
| Respondent. ) | |

THIS MATTER is before the Court on Petitioner Rachan Damidi Reddy's ("Reddy") Motion for Summary Judgment. (Doc. No. 71). Respondent Rashid A. Buttar ("Buttar") has responded to Petitioner's Motion, (Doc. No. 73), Petitioner replied (Doc. No. 75), and the matter is now ripe for review. For the reasons stated below, Petitioner's Motion for Summary Judgment is GRANTED.

I. **BACKGROUND**

The matter arrived before the Court with a moderately complex background. On June 21, 2010, the parties entered into a Share Sale and Purchase Agreement ("the Agreement") pertaining to the share of several entities in the Philippines. (Doc. No. 74, p. 1). At some point, a dispute arose between the parties that led to an arbitration in Singapore. (Doc. No. 1, p. 2). Pursuant to Paragraph 8(b) of the Agreement, "[a]ny dispute arising out of or in connection with this contract, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC Rules") . . . ." (Doc. No. 1-2, p. 16, ¶ 8).

Respondent objected to the arbitration, arguing that he did not sign the Agreement and that,

1

assuming he did sign the Agreement, it was not the latest version of the document. (Doc. No. 57-2, p. 32, ¶ 34). Respondent has continued to maintain the Agreement presented before the Singapore International Arbitration Centre ("SIAC") was a fraudulent document. E.g., (Doc. No. 71-3, p. 10). On January 29, 2013, the arbitration tribunal (the "tribunal") informed the parties that Respondent's jurisdictional challenge—which consisted of his argument that he did not sign the document, and that if he did, it was not the latest version—would be addressed with the merits. (Doc. No. 57-2, p. 33, ¶ 37). When Respondent nor counsel appeared at the hearing, see id. at 35, ¶ 42, the tribunal waited fifteen minutes, and in the continued absence of Respondent and his counsel, resumed the proceedings pursuant to the SIAC's rules. Id. Having reviewed Respondent's arguments, the tribunal found Respondent's jurisdictional argument "disingenuous." Id. at 37, ¶ 46. Specifically, the tribunal found:

> By his own email of 23 June 2010, the Respondent in forwarding a copy of the Agreement dated 21 June 2010 signed by both parties stated:
>
> "Rachan,
> Here is the [Agreement] and also the other agreement (one page) that you asked for. A few of the last adendums [sic] were not signed because I didn't think they needed to be . . . but then I thought it would be better to sign then [sic] than NOT sign them. So the hard copies being sent, have all the pages signed. They did not get out today due to missing the deadline for Fed Ex but all papers are signed, witnessed and completed, ready to go out Fed Ex first thing tomorrow. Thanks Rachan. And Congratulations! BTW, I'm definitely having some 'seller's remorse'. Talk to you soon."

Id. at 37-38, ¶ 46 (alterations and emphasis in original). The tribunal further noted that "[t]he Agreement enclosed as per the said email showed all pages thereof duly signed and initialed at every page by both parties." Id. Accordingly, the tribunal considered and dismissed Respondent's jurisdictional objection based on an email and subsequent documents he sent to Petitioner in 2010 purporting to be a signed copy of the Agreement. Id.

On April 10, 2015, the SIAC issued its Final Award, which was in favor of Petitioner. (Doc. No. 1, p. 2). The SIAC ordered Respondent to pay Petitioner "the monies previously paid to [Respondent] by the [Petitioner] amounting to US $1,550,000.00." Id. at 2-3 (alterations in original) (quotation omitted). In addition, the award was to bear interest at 5.33 percent per annum from the date the arbitration commenced to the date of the award, and SIAC awarded Petitioner $381,479.34 in legal fees and disbursements, $26,550.68 in expert witness fees, and $7,231.96 in other expenses, and costs of the arbitration totaling $79,439.80. Id. at 3. On April 6, 2018, Petitioner initiated this action, requesting a judgment in his favor of the cumulative total of the above amounts in addition to pre-judgment interest, post-judgment interest, costs, and attorneys' fees. Id. In the meantime, Respondent had moved several times, eventually arriving in New Zealand. (Doc. No. 71-3, p. 16).

Petitioner served Respondent on April 15, 2018, and Respondent's Answer was therefore due on May 7, 2018. (Doc. No. 3). By June 19, the Court had received no further filings from either party and issued a Show Cause Order, instructing Petitioner to inform the Court why he had not sought an entry of default or otherwise prosecuted his case. (Doc. No. 4). In his response to the Show Cause Order, Petitioner's counsel stated he received a call from counsel for Respondent indicating service at the address where it occurred may not have constituted good service, and Respondent planned to dispute jurisdiction and venue in the Western District. (Doc. No. 5, p. 1). After Respondent's counsel refused to accept service on his behalf, Petitioner sought to effect service in a manner beyond reproach, including seeking to have the Iredell County Sheriff's Office personally serve Respondent at his medical practice in Mooresville, North Carolina. Id. at 3. Petitioner was repeatedly told that Respondent was out of the country and no one at the practice

3

knew when he might return to North Carolina. Id. Petitioner subsequently requested, and the Court granted, a Motion for Extension of Time to serve Respondent so he could effectuate service of process that would not be subject to later attack. (Docs. Nos. 6, 7).

Not long thereafter, Respondent filed a Motion to Dismiss for Lack of Jurisdiction and Improper Venue. (Doc. No. 8). In the accompanying memorandum, Respondent argued the Court lacked subject matter and personal jurisdiction, and that venue was not proper in North Carolina. (Doc. No. 9, p. 2). The Court denied the Motion in part, determining that it had subject matter jurisdiction over the action, and deferred ruling on the other portions of the Motion pending a ninety (90) day period to conduct jurisdictional discovery. (Doc. No. 18, pp. 5-6, 8). After this ninety-day period, during which the parties filed a flurry of documents, including motions for extensions, sanctions, continuances, and amended memoranda, the Court held a hearing on the motion, and the parties later submitted proposed findings of fact. (Docs. Nos. 44, 45). The Court ultimately found that Respondent was domiciled in North Carolina at the time the action was commenced on April 6, 2018, and the Court accordingly had personal jurisdiction over him. (Doc. No. 50, pp. 10, 15). The Court also found venue was proper in the Western District. Id. at 15.

After the Court determined it had personal jurisdiction over Respondent and that venue was proper, Petitioner filed for leave to amend his petition, specifically requesting an opportunity to provide the mutually signed copy of the Agreement and assert diversity jurisdiction as an additional ground for subject matter jurisdiction. (Doc. No. 52). The Court granted Petitioner's motion, and Petitioner filed his Amended Petition approximately nine days later. (Docs. Nos. 56,

4

57).[1]

Yet again, Respondent did not file an Answer or Response to the Amended Petition. Over two months after Petitioner filed his Amended Petition, and in an effort to ensure the expeditious handling of its docket, the Court issued a Second Show Cause Order. (Doc. No. 59). In the Second Show Cause Order, and in light of Petitioner being granted his Motion to Amend Petition, the Court ordered Petitioner to show why he had not sought an entry of default or otherwise prosecuted his case, considering that Respondent's Answer or Response had been due over six weeks prior to the Second Show Cause Order. Id. The same day the Court's Second Show Cause Order was issued, Respondent finally filed his Response to the Amended Petition—long after it was originally due, and without having sought an extension from or otherwise notifying the Court. See generally (Doc. No. 60).

A little over a week later, Petitioner filed his Response to the Second Show Cause Order. (Doc. No. 61). Instead of seeking an entry of default, counsel for Petitioner reached out to Respondent's counsel to inquire. Id. at 2, ¶ 9. Respondent's counsel requested Petitioner wait before seeking an entry of default so she could confer with her client, including the prospect of settlement. Id. at 2, ¶ 10. Evidently, there was difficulty in arranging this communication due to the fact Respondent had moved to New Zealand. Id. In any event, Petitioner's counsel was satisfied with Respondent's counsel's update, and the parties conducted their Initial Attorney Conference. Id. at 2, ¶ 10-11.

Finally, after approximately a year and a half of contentious procedural litigation, the case

---

[1] The Singapore arbitration provision, which was included in the copy of the Agreement attached to the Original Petition, is repeated verbatim in the Agreement attached to the Amended Petition. Compare (Doc. No. 1-2, p. 16, ¶ 8) with (Doc. No. 57-1, p. 15, ¶ 8).

5

moved forward.  Petitioner filed his Motion for Summary Judgment on February 27, 2020.  (Doc. No. 71).  The Court scheduled a hearing on the Motion, set for April 8, 2020.  (Doc. No. 72).  Respondent filed his Response and Petitioner filed his Reply, thereby making the matter ripe for review.  (Docs. Nos. 73, 74).  Due to the rapidly evolving situation regarding the outbreak of the COVID-19 novel coronavirus, the Court determined it most prudent to cancel the hearing and adjudicate the motion based on the parties' briefs.  (Doc. No. 76, p. 1).

## II. LEGAL STANDARD

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact in the case.  Fed. R. Civ. P. 56(a).  A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the burden shifts and the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial."  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n.11 (1986) (quoting Fed. R. Civ. P. 56(e)).

Simply "rest[ing] upon the mere allegations or denials of [a plaintiff's] pleading" is insufficient to survive a properly made and supported motion for summary judgment.  Id.  Instead, the non-moving party must adduce affirmative evidence, by means of affidavits or other verified evidence, showing that a genuine dispute of material fact exists.  See id. at 586–87.  "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."  Dash v. Mayweather, 731 F.3d

303, 311 (4th Cir. 2013). Additionally, the Fourth Circuit has noted "summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of [his] case and does not make, after adequate time for discovery, a showing sufficient to establish that element." Williams v. Genex Servs., LLC, 809 F.3d 103, 109 (4th Cir. 2015).

**III. ANALYSIS**

In his Memorandum accompanying the Motion for Summary Judgment, Petitioner contends Respondent lacks a defense to enforcement of the arbitration award; that even if the Court had a procedural mechanism for reviewing the arbitrator's decision, such decision is entitled to substantial deference; and that collateral estoppel otherwise bars Respondent's challenge. See generally (Doc. No. 71-1). Respondent argues Articles V(1)(a) and V(2)(b) of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter "the New York Convention") precludes enforcement of the award, and that collateral estoppel does not apply. See generally (Doc. No. 74). The Court addresses these arguments in turn below.

**A. Enforcement of the Award**

Petitioner's first argument for summary judgment is that, as required under the New York Convention, Respondent has failed to state one of the limited defenses to enforcement. (Doc. No. 71-1, p. 1-2). Respondent, on the other hand, contends there are multiple provisions of the New York Convention, namely Article V(1)(a) and V(2)(b), which preclude the Court from recognizing the arbitration award. (Doc. No. 74, p. 2).

It is well-established law that "judicial review of an arbitration award in federal court is substantially circumscribed." Three S Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007) (quotation omitted). This applies to commercial international arbitration awards,

7

and under the New York Convention, which is enforced at 9 U.S.C. § 201-208, courts are encouraged to recognize and enforce such arbitration agreements. Scherk v. Alberto-Culver Co., 417 U.S. 506, 520, n.15 (1974); Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 366 n.10 (4th Cir. 2012). "Upon a request for confirmation of an award, the court may determine only whether the arbitrators acted within the scope of their authority, and may not consider whether the arbitrators acted correctly or reasonably." Denver Global Prods., Inc. v. Leon, No. 5:17-cv-00102-MOC-DSC, 2018 WL 3433291, at *3 (W.D.N.C. June 11, 2018) (quotation omitted) (magistrate judge memorandum and recommendation), adopted in 2018 WL 3428149 (W.D.N.C. July 16, 2018), appeal docketed No. 18-1853 (4th Cir. 2018). In other words, "judicial review of an arbitration award is 'among the narrowest known at law.'" Id. (quoting AO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS, Ltd., 404 F. App'x 793, 797 (4th Cir. 2010).

This limited review is even more so the case when an international arbitration award is at stake. Specifically, 9 U.S.C. § 207 provides that "any party to the [international] arbitration may apply to any court having jurisdiction . . . for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. The same statute requires a reviewing court to "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." Id. Those grounds include:

(a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; [or]
(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; [or]
(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions

8

- on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
- (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
- (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the laws of which, that award was made; or
- (f) The subject matter of the conflict is not capable of settlement by arbitration in the country in which enforcement is sought; or
- (g) Recognition and enforcement of the award would violate the public policy of that country.

Bayer CropScience AG v. Dow AgroSciences LLC, No. 2:12cv47, 2016 WL 205378, at *4-5 (E.D. Va. Jan. 15, 2016) (citing New York Convention, Art. V(1)(a)-(e), V(2)(a)-(b)), aff'd 680 F. App'x 985 (Fed. Cir. 2017), cert. denied 138 S. Ct. 505 (2017). The first five enumerated grounds above constitute the defenses of Article V(1)(a)-(e), and the latter two constitute the defenses of Article V(2)(a)-(b). See M&C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 848 (6th Cir. 1996). The party opposing the enforcement of the arbitration award has the burden of proof on these defenses, and this "burden is a heavy one, as the showing required to avoid summary confirmance is high." Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 405 (2d Cir. 2009) (alterations in original) (quotation omitted). In this case, Respondent objects on only two of the above grounds—that the parties were under some incapacity or the agreement was not valid under the law to which the parties have subjected it, and that the enforcement of the award would be contrary to the public policy of this country. See (Doc. No. 74, p. 2).

With respect to the first enumerated defense raised by Respondent—that the agreement was not valid under the law to which the parties were subjected—a challenge under Article V(1)(a) must be brought against the arbitration provision, not the entire contract. BCB Holdings Ltd. v.

9

Gov't of Belize, 232 F. Supp. 3d 28, 47-48 (D.D.C. 2017). Respondent entirely fails to advise the Court, however, on any provision of Singapore law which might render the arbitration agreement invalid. See generally (Doc. No. 74, p. 2). For that matter, there is no indication there is a provision under the law of the Philippines which might render the arbitration agreement invalid. See id. Instead, Respondent summarily concludes "[n]either party or any property subject to the Agreement were located in Singapore. Additionally, Respondent nor Respondent's attorney were present at the Singapore arbitration. Based on the foregoing, the appropriate jurisdiction for the arbitration was the Philippines . . . ." Id. Without any indication of supporting law rendering the agreement invalid, Respondent has failed on his burden of proof to establish the enumerated defense under Article V(1)(a), and accordingly summary judgment is appropriate. See Williams, 809 F.3d at 109. Absent evidence the arbitration agreement is invalid under Singapore law, the challenge to enforcement under Article V(1)(a) must fail.

Similarly, Respondent's second argument against enforcement must likewise fail. Respondent contends the arbitration award was procured by fraud and was advised by his attorney not to attend the arbitration in Singapore because he would accept Singapore's jurisdiction. (Doc. No. 74, p. 2). The public policy defense

> is to be construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice. A respondent opposing a petition to confirm and enforce a foreign arbitral award must demonstrate that such recognition violates some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.

Research and Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC, 182 F. Supp. 3d 556, 567-68 (E.D. Va. 2016) (citations and quotations omitted). In other words, "the defense is frequently invoked but rarely successful, particularly in view of the strong United States policy favoring

10

arbitration." Agility Pub. Warehousing Co. K.S.C., Prof'l Contract Adm'rs, Inc. v. Supreme Foodservice GmbH, 495 F. App'x 149, 151 (2d Cir. 2012). While Respondent continues to argue the arbitration provision was procured by fraud, he has not presented evidence of the allegedly fraudulent act. Once again, at the summary judgment stage, there must be more than a scintilla of evidence—and certainly more than bare allegations—for the nonmoving party to prevail. Dash, 731 F.3d at 311. Accordingly, Respondent's challenge under Article V(2)(b) also fails.[2]

## B. Deference to the Arbitrator

Petitioner's second argument in favor of summary judgment is that, even if there were a procedural avenue for the Court to review the arbitrator's decision, it is entitled to substantial deference. (Doc. No. 71-1, p. 7).

Although discussed in Section III-A above, it bears repeating again that "judicial review of an arbitration award in federal court is substantially circumscribed." Three S Del., 492 F.3d at 527 (quotation omitted). When reviewing a petition to confirm an arbitration award, a court has the limited authority to ask whether the arbitrators were within the proper scope of their authority— and not whether they reached the correct, or even a reasonable, outcome. Denver Global Prods., 2018 WL 3433291, at *3. In the Fourth Circuit, it is has been the case for some time that "neither

---

[2] As part of his argument against recognition of the award under Article V(2)(b), Respondent appears to argue that recognition of the award, in light of his absence at the arbitration, would violate public policy. (Doc. No. 74, p. 2). Such a position would be a separate ground for refusal to recognize the award, namely the enumerated defense in Article V(1)(b). See BayerCropscience AG, 2016 WL 205378, at *5. "A party is unable to present [its] case at arbitration if the party lacks the opportunity to be heard at a meaningful time and in a meaningful manner." Research and Dev. Ctr., 182 F. Supp. 3d at 570 (alteration in original) (quotations omitted). In situations where the respondent had notice of the international arbitrations and an opportunity, either directly or by representation, whether in person or remotely, to present their argument, courts consider it sufficient opportunity and will recognize the award. Id. Here, Respondent had his jurisdictional objection properly before the tribunal, which considered his arguments, and subsequently rejected them as "disingenuous." (Doc. No. 57-2, p. 37, ¶ 46). Thus, an objection under this defense would fail because, not only did Respondent have the opportunity to present his jurisdictional objection, but he actually did so.

11

misinterpretation of a contract nor an error of law constitutes a ground on which an award can be vacated." Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193-94 (4th Cir. 1998) (quotation omitted). Instead, "the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." Ronald Barranco and Print 3D Corp. v. 3D Sys. Corp., No. 3:14-cv-00188-RJC-DSC, 2016 WL 4546449, at *2 (W.D.N.C. Aug. 31, 2016) (quotations omitted), aff'd sub nom. Barranco v. 3D Sys. Corp., 734 F. App'x 885 (4th Cir. 2018).

The value of this narrow review is even more prevalent in cases featuring extensive, and often puerile, litigation. The twin goals of arbitration are the efficient settlement of disputes and the avoidance of expensive and long litigation. Blackwater Sec. Consulting, LLC v. Nordan, No. 2:06-CV-49-F, 2011 WL 237840, at *11 (E.D.N.C. Jan. 21, 2011). As the Eleventh Circuit observed,

> When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken. Arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases. The more cases there are, like this one, in which the arbitrator is only the first stop along the way, the less arbitration there will be. If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later.

B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 913 (11th Cir. 2006), abrogated on other grounds by Frazier v. CitiFinancial Corp., 604 F.3d 1313 (11th Cir. 2010).[3]

Respondent here has produced no evidence that the arbitrator acted outside of his proper scope. Instead, Respondent continues to argue the Singapore arbitration provision was fraudulent

---

[3] While a "never-say-die" attitude can, in some situations, be commendable or even entertaining, see THE GOONIES (Warner Bros. Entertainment, Inc. 1985), it loses its allure in real-world civil litigation in which there are significant legal and financial implications, such as in the present case.

12

and that the document he agreed to—which Respondent has not produced—contained a Philippine arbitration clause. (Doc. No. 71-3, pp. 10, 15-17, 21-22). To this point, however, Respondent has offered no evidence of a fraudulent act by Petitioner to induce the Singapore arbitration provision beyond his conclusory allegation. E.g., (Doc. No. 71-2, p. 3). Moreover, Respondent has produced no evidence, apart from maintaining his allegations, of the Philippine arbitration provision. Instead, he contends the document containing the Philippine arbitration provision was lost during one of his several moves—at least one of which occurred after the arbitration award was handed down in 2015. (Doc. No. 74, p. 3). Respondent also stated during his deposition that "if they [the documents] do [exist], then they're somewhere in storage in either North Carolina or in Texas." (Doc. No. 71-3, p. 16). Notably, when asked whether he had tried to look for the document containing the Philippine arbitration provision, Respondent conceded he had not, but suggested he would do so when he returned to the United States to see if he could locate them. Id. at 21-22. The Court appreciates the logistical difficulties that arise from international litigation; the Court believes, however, at least for a document as important as this—on which Respondent's entire case turns—Respondent would have made time to look for the document during the preceding year and a half while this case has been ongoing, not to mention the five years since the arbitration award was announced.

In sum, Respondent has continued to maintain the Singapore arbitration provision was fraudulent, but has not offered evidence of a fraudulent act or a document containing a contrary provision. Nor has Respondent searched for that document during the course of this litigation. Thus, there is no evidence in the record, apart from his conclusory allegations, that the tribunal acted outside its proper scope.

13

### C. Collateral Estoppel

Petitioner's third argument in favor of summary judgment is that collateral estoppel otherwise bars Respondent's challenge to the recognition and enforcement of the award. (Doc. No. 71-1, p. 9). Respondent contends that because he did not have a "full and fair opportunity to litigate" during the arbitration, collateral estoppel should not bar his claim. (Doc. No. 74, p. 3).

Collateral estoppel applies "when the losing party in an arbitration proceeding seeks to reopen its case in federal court." Little Six Corp. v. United Mine Workers of Am., Local Union No. 8332, 701 F.2d 26, 29 (4th Cir. 1983). The party seeking to use collateral estoppel to preclude or bar the other party's issue must show: (1) the issue is identical to the one previously litigated; (2) the issue was actually resolved in the prior proceeding; (3) the issue or fact was "critical and necessary to the judgment" of the prior proceeding; (4) the judgment of the prior proceeding is final and valid; and (5) the party to be precluded by the prior proceeding had a "full and fair opportunity" to litigate the issue. In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004). In the present case, Petitioner contends, and Respondent does not dispute, that, the first four requirements are met: the tribunal decided the validity of the Singapore arbitration provision, that decision was actually resolved during the arbitration, the issue was necessary to the arbitration, and the judgment of the tribunal is final. See generally (Doc. No. 71-1, p. 11-13); see also (Doc. No. 74, p. 3). Respondent's only argument against the application of collateral estoppel is that he did not have a full and fair opportunity to litigate the issue during the arbitration. (Doc. No. 74, p. 3).

For parties to have a full and fair opportunity to litigate, they must "have a fair opportunity procedurally, substantively and evidentially to pursue [their] claim the first time." Blonder-

14

Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 333 (1971) (quotation omitted); see also Scott v. Metro. Health Corp., No. 5:12-CV-383-F, 2013 WL 4520264, at *11 (E.D.N.C. Aug. 23, 2013). The party must have had the opportunity to litigate; it does not matter if it chose not to so litigate. See Sartin v. Macik, 535 F.3d 284, 290 (4th Cir. 2008); see also Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 332-33 (1979); SEC v. Resnick, 604 F. Supp. 2d 773, 780 (D. Md. 2009). As the Fourth Circuit has explained, "[i]t is well settled that the full-and-fair opportunity formulation generally requires that a litigant receive reasonable notice of the claim against him *and* opportunity to be heard in opposition to that claim." Holland v. Kohn, 12 F. App'x 160, 166 (4th Cir. 2001) (emphasis in original) (quotation omitted).

Respondent's contention that he did not have a full and fair opportunity to litigate his case at the prior arbitration is without merit. Respondent's argument is based on the premise that he did not attend the arbitration in Singapore because doing so would have led to his acceptance of jurisdiction and the allegedly fraudulent document. (Doc. No. 74, p. 3). Such argument overlooks the reality of what occurred. Not only did Respondent have the *opportunity* to litigate, but he *actually litigated* the issue of jurisdiction during the arbitration. While it is true that neither Respondent nor his attorney appeared before the tribunal, (Doc. No. 57-2, p. 35, ¶ 42), it is also true that Respondent had sufficient notice to file an objection to jurisdiction—which he did, and which the tribunal considered. Id. at 37, ¶ 46. In its award, the tribunal decided that Respondent's jurisdictional objection was "disingenuous." Id. To the extent Respondent's argument is based on his attorney (representing Respondent during the arbitration) telling him not to attend, such argument is irrelevant to the question of whether Respondent had an opportunity to litigate. In fact, it is undercut by the tribunal's discussion of Respondent's very own email to Petitioner

15

purporting to encompass the Agreement and addenda—the tribunal did not assume it had jurisdiction over the dispute, but instead reviewed the evidence before it in reaching that determination. Id.

### IV. CONCLUSION

For the foregoing reasons, Respondent has failed to demonstrate one of the defenses to recognition under the New York Convention applies in this case, nor has he demonstrated the tribunal acted outside its scope of authority or that collateral estoppel should not apply. Accordingly, Respondent has failed to show the Court that it should refuse to confirm the arbitration award returned by SIAC. Petitioner's Motion for Summary Judgment (Doc. No. 71) is therefore GRANTED.

The Amended Petition to Confirm Foreign Arbitral Award (Doc. No. 57) is GRANTED. The SIAC award dated April 10, 2015, see generally (Doc. No. 57-2), is CONFIRMED.

The Clerk of Court is respectfully DIRECTED to enter judgment in favor of Petitioner against Respondent for: (1) $1,550,000.00 for repayment of monies previously paid from Petitioner to Respondent, plus interest at the rate of 5.33 percent per annum from the date of commencement of the Arbitration to the date of the Award; (2) $381,479.34 for repayment of legal fees and disbursements; (3) $26,550.68 for repayment of expert witness fees; (4) $7,231.96 for other miscellaneous expenses; and (5) $79,439.80 for costs of the arbitration.

IT IS SO ORDERED.

Signed: May 4, 2020

_____
Frank D. Whitney
Chief United States District Judge